STATE v. ALBERT JENNINGS PAINTER.

(Filed 22 September, 1965.)

**1. Criminal Law § 71—**

Intoxication of defendant does not render his confession incompetent but merely goes to its weight unless defendant's intoxication amounts to mania.

**2. Same—**

The evidence disclosed defendant had been drinking a large quantity of liquor each day and was intoxicated when arrested, that he was placed in jail, that the next morning he asked to see an FBI agent, that he was taken to a conference room, and that during the interrogation he became sick and was given a drink of whiskey to steady his nerves. *Held:* The evidence does not show that defendant was intoxicated to the point of mania or that he was given whiskey to induce a confession, and the circumstances in regard to intoxicants does not render his confession incompetent.

**3. Same—**

Evidence that defendant asked to talk with an FBI agent, that he was taken to a conference room and told of his right to representation by an attorney, his right to remain silent and that anything he said might be used against him, and that thereafter defendant voluntarily made the confession offered in evidence, with no evidence to the contrary, *held* sufficient to support a ruling admitting the confession in evidence.

**4. Same—**

While the better practice is for the court to determine the voluntariness of a confession upon a *voir dire* in the absence of the jury, where there is plenary evidence to sustain a finding that the confession was voluntary, and no evidence to the contrary, and defendant merely objects to the admission of the confession but offers no evidence in regard to its voluntariness, the ruling of the court admitting the confession amounts to a finding that the confession was voluntary, and the absence of a specific finding of voluntariness is not fatal.

**5. Criminal Law § 34; Forgery § 2—**

In a prosecution for forgery and issuing a forged instrument, G.S. 14-119, G.S. 14-120, evidence that defendant had theretofore forged checks

other than those specified in the indictment may be competent on the question of intent.

**6. Criminal Law § 82—**

　　The trial court has discretionary authority to permit the solicitor to ask leading questions in proper instances.

**7. Criminal Law § 71; Constitutional Law § 29—**

　　Whether a confession offered in evidence is voluntary and competent is a question of law and fact for the court and not an issue of fact for the jury, and defendant's objection on the ground that the question should have been submitted to the jury is untenable.

APPEAL by defendant from *Campbell, J.,* January 1965 Criminal Session of BUNCOMBE.

Criminal prosecution on an indictment containing two counts. The first count charges defendant with the forgery of the following cheque, a violation of G.S. 14-119:

"Dec. 16, 1964　　No...........

"FIRST NATIONAL BANK EXCHANGE — [Roanoke, Va.]

"PAY TO THE ORDER OF ALBERT PAINTER—Road Supt.

116994　　　$48.00

Forty-Eight　Dollars.... .......................... ....................DOLLARS

"Road Expense　　　　　　　　Motor　Freight
　　　　　　　　　　　　　　　　　R. S. Painter"

The second count charges him with thereafter uttering this forged cheque, a violation of G.S. 14-120.

Plea: Not guilty. Verdict: Guilty as charged in both counts in the indictment.

From a judgment of imprisonment of not less than eight years or more than ten years on each count, said sentences to run concurrently, defendant appeals.

*Attorney General T. W. Bruton and Deputy Attorney General Ralph Moody.*
*Joseph C. Reynolds for defendant appellant.*

PARKER, J. The State's evidence shows these facts: On 16 December 1964 defendant came into the store of The Sports Mart, Inc., in Asheville, operated by Gene Wike, represented himself as a safety officer for Motor Freight, and said he would like to select a trophy to present one of his drivers. He had a brief case with him, and was wear-

ing a freight officer's cap and a black jacket. He had safety badges on his cap, three on each side, and a motorman's badge on the top. He selected a trophy which, with tax added, cost $8.19, told Wike he would have to give him an expense cheque, and asked if he would accept it. He showed Wike his driver's license with his name and home town on it, and a cheque already filled out on its face, drawn on a bank in Roanoke, Virginia, which is described in the indictment above. Wike told him he would accept the cheque, and defendant endorsed the cheque on its back, signing his name Albert Painter and writing beneath it the motor number appearing on his identification. He gave the cheque to Wike, and Wike gave him the trophy and $39.81 in money. After defendant left the store, Wike took a second look at the cheque and noticed that the "R's" in the signature on the cheque were so similar to the "R's" in the endorsement that they must have been made by the same man. Whereupon, he called the bank in Roanoke, Virginia. After talking to the bank in Roanoke, he went to police headquarters in Asheville and made a report. Two days later Wike went to the jail in Asheville with Mr. Allison to identify defendant. Defendant said, "What is going on here?" Mr. Allison replied, "Do you know this gentleman?" Defendant said: "Yes, I know him. What is going on?" Allison had some papers and defendant evidently saw the cheque and said: "Can't I take care of this cheque and get out of this situation?" Wike ran the cheque defendant gave him through the collection department of the First Union National Bank, and it was never paid.

About 11 p.m. on 17 December 1964, police officers arrested defendant in Asheville. He was driving a U-Drive-It car and wearing a cap with safety badges on it. Defendant had been drinking. In the car was a brief case, which defendant said was his. In the brief case was a cheque book and a cheque written out as follows:

"Nov. 23, 1964     No. 5-H

"FIRST NATIONAL BANK EXCHANGE
    ROANOKE, VA.

                                116994

"PAY TO THE ORDER OF ALBERT PAINTER (Road Supt.)     $48.00

" ............................................................................................ DOLLARS

"Road Expense                              Motor Freight"

Defendant said this cheque was his. Defendant had on his person $47.89 when arrested. He was placed in jail.

Defendant assigns as error the admission in evidence over his objection and exception of an extrajudicial confession of guilt made by defendant on 18 December 1964 to FBI agent Robert Moore and J. C. Chandley, a detective sergeant of the Asheville Police Department.

The State's evidence in respect to the circumstances surrounding the making of the extrajudicial confession of guilt by defendant is as follows, as shown on direct examination of Sergeant Chandley, which we summarize, except when quoted:

About 11 p.m. on 17 December 1964 the police in Asheville arrested defendant and carried him to police headquarters. He was drinking, so he was put in jail. The next morning Chandley started to talk with defendant, who said he thought his case was an FBI case, because the cheque was written on an out-of-state bank, and he wanted to see the FBI. Pursuant to defendant's request, he called Robert Moore, the FBI agent in Asheville. Moore came to police headquarters, and he, Moore, and defendant went into the interrogation room. Moore showed defendant his badge and identification and told him Chandley was with the Asheville Detective Department, and they wanted to go over some cheques. Defendant said it was all right. Moore told defendant that he had a right to have a lawyer and that he could make a telephone call; he also explained to him his rights as to making a statement or declining to make a statement, and that if he made a statement, it might be used against him. After Moore made these statements, defendant said he understood them. Defendant made no request to see a lawyer or to make a telephone call to anyone. Whereupon, he and Moore talked to defendant between three and four hours, and the defendant got sick and they quit for a while. Defendant said he had been drinking from two to three pints of liquor a day. He "obtained a little drink for him to steady him up because he was sick; he was almost ready to go into D.T.'s."

At this point in Chandley's testimony, he was asked as to the conversation between him, defendant and agent Moore. Defendant objected, his objection was overruled, and he excepted. Defendant's counsel stated he "was objecting on the grounds that by the officer's own testimony this alleged confession was procured under coercion and under such circumstances that this man's constitutional rights were violated." Defendant made no request, according to the preferable practice set forth in *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104, that the judge conduct a preliminary inquiry in the absence of the jury in respect to the competency of his statement and that he be permitted to testify as to the circumstances surrounding his making the statement, and neither did he request permission to offer any testimony in respect thereto. Neither did he ask permission to cross-

examine Chandley to show, if he could, that his statements to Chandley and Moore were not in fact voluntary or not understandingly made because of his mental and physical condition. Defendant merely relied upon his objection and exception as to the competency of the confession. The judge made no finding of fact in respect to the competency or incompetency of the confession, but merely overruled defendant's objection in respect to its being offered in evidence by the State.

This is a summary of the conversation between Chandley and defendant, narrated by Chandley on direct examination: The cheque over there and another one were placed in front of the defendant and he admitted writing the cheque. He asked defendant why he signed R. S. Painter and not like the others, and defendant said he "goofed." He asked defendant if he knew what it meant by signing R. S. Painter to it, and defendant said "he knew it meant forgery." He showed him nine cheques. Defendant said he had built time in Kentucky for cheques, that he got out in October of last year, got to drinking and running around, and started writing cheques again. He went from Kentucky to Tennessee, to Knoxville, where he rented a U-Drive-It car in Knoxville. He worked in Tennessee and then came to Asheville and rented a Hertz U-Drive-It. He got a case that had been taken out of the U-Drive-It car and asked defendant if it was his and he said yes. He showed him a cheque and defendant said it was his. A book of blank cheques was in the case. Defendant said he would go to the hotel at night and borrow a typewriter. Defendant said he "goofed" when he signed the cheque R. S. Painter. He showed defendant about five cheques and also four other cheques. Defendant said he wrote the cheques.

The circumstances surrounding the making of the confession by defendant as shown by cross-examination of Chandley are as follows: "I picked the defendant up on the night of the 19th [sic] about 11:00 o'clock. He was not drunk. He was drinking. We put him in jail and saw him the next morning about 9:00 or 9:15 o'clock. The defendant told me he had been drinking 2 to 3 pints of liquor a day. I did not know the man but could tell he was a drinking man. He looked some different from what he does now. He turned sick while we were talking to him. He just turned real white. He said he would like to see a doctor. I interrogated him for three or four hours. He got so bad that I got a drink from the Chief to settle his nerves. He said he was sick because he hadn't had anything to eat and had been drinking. They only served coffee in jail that morning."

FBI agent Robert Moore was not called as a witness by the State. The State's evidence consisted of the testimony of Wike and Chandley. After the State rested its case, defendant stated he desired to call

·Moore. Moore was called, and defendant's counsel talked with him. After such conversation, defendant "in open court voluntarily waived the appearance of agent Moore of the FBI." Defendant did not testify as to the circumstances surrounding the making of his extrajudicial confession and offered no evidence.

In respect to intoxication of accused at time of confession as affecting its admissibility, Bobbitt, J., said for the Court in *S. v. Isom,* 243 N.C. 164, 90 S.E. 2d 237, 69 A.L.R. 2d 358:

> "Ordinarily, intoxication of an accused person does not render inadmissible his confession of facts tending to incriminate him. But the extent of his intoxication when the confession was made is relevant; and the weight, if any, to be given a confession under the circumstances disclosed is exclusively for determination by the jury. 20 Am. Jur., Evidence, sec. 525; 22 C.J.S., Criminal Law, sec. 828; Annotation: 74 A.L.R. 1102 *et seq.*, and supplemental decisions. See, *S. v. Bryan,* 74 N.C. 351."

See also *S. v. Stephens,* 262 N.C. 45, 136 S.E. 2d 209, and annotation to the *Isom* case in 69 A.L.R. 2d 361 *et seq.*

Ordinarily, the fact that an extrajudicial confession of crime is made after intoxicants have been furnished the accused by police officers having him in custody is not sufficient, according to the weight of authority, to render the confession inadmissible, although there is contrary authority. 2 Wharton's Criminal Evidence, 12th Ed. by Anderson, Ch. 7, Confessions and Admissions, § 388, Intoxication; 23 C.J.S., Criminal Law, § 828, pp. 229-30; 20 Am. Jur., Evidence, § 525, Intoxication, p. 449; Annot., 74 A.L.R., p. 1104; Annot., 69 A.L.R. 2d, p. 368.

*Commonwealth v. Chance,* 174 Mass. 245, 54 N.E. 551, 75 Am. St. Rep. 306, was a murder case. Defendant objected to the introduction in evidence by the commonwealth of incriminating statements made by him in conversations with officers. Holmes, C.J., afterwards a member of the U. S. Supreme Court, said for a unanimous Court:

> "It is argued further that the conversations were not voluntary in view of the defendant's confinement, recent recovery from a fit of delirium tremens, etc. We have no disposition to make the rule of exclusion stricter than it is under our decisions. It goes to the verge of good sense, at least: *Regina v. Baldry,* 2 Den. C. C. 430, 445, 446; *Regina v. Reeve,* 12 Cox C. C. 179, 180; *Hopt v. People,* 110 U.S. 574, 584. The finding that the conversations were voluntary was fully warranted: See *Commonwealth v. Bond,* 170 Mass. 41."

This is said in Annot. 69 A.L.R. 2d 369: "A number of courts have recognized that proof of intoxication amounting to 'mania' or a condition in which the person confessing is unconscious of the meaning of his words renders a confession made by a person while in such state inadmissible." In support of the statement, cases are cited from eleven states and from the District of Columbia.

There are no discrepancies in the evidence with respect to the circumstances surrounding the making of an extrajudicial confession of guilt by defendant to agent Moore and Sergeant Chandley. All the evidence is to this effect: Defendant was drinking when he was arrested about 11 p.m. on 17 December 1964 and placed in jail. He had been drinking two or three pints of intoxicating liquor a day. When Sergeant Chandley started to talk to him next day, defendant said he thought his case was an FBI case, because the cheque was written on an out-of-state bank, and he wanted to see the FBI. Pursuant to his request, Chandley called Robert Moore, the FBI agent in Asheville. Moore came to police headquarters, and he, Chandley, and defendant went into the interrogation room. Moore showed defendant his badge and identification and told him Chandley was with the Asheville Detective Department. FBI agent Moore told defendant in detail of his constitutional rights. When he finished, defendant said he understood them. Defendant made no request to see a lawyer or to make a telephone call. There is nothing in the evidence with respect to the circumstances surrounding the making of the confession by defendant to indicate he was intoxicated or under the influence of intoxicating liquor at the time he made his confession, though it seems clear that the defendant during his conversation with the officers became jittery and sick by reason of his prior heavy drinking and lack of breakfast, and said he would like to see a doctor, and in Chandley's opinion he "was almost ready to go into D.T.'s." However, there is no evidence before us that defendant did go into delirium tremens. Chandley gave him a drink of intoxicating liquor, not to induce a confession, but to settle his nerves. There is no evidence to indicate that defendant's confession was induced by promises, or inducements, or hope or fear, or coercion, or threats, or violence. All the evidence, without contradiction or discrepancy, shows his confession was voluntarily made and was the product of a free will and a conscious understanding of what he was saying, and this is true although Sergeant Chandley gave him a drink of intoxicating liquor to steady his nerves. Consequently, the extrajudicial confession of guilt by defendant was properly admitted in evidence. S. v. Barnes, 264 N.C. 517, 142 S.E. 2d 344; S. v. Davis, 253 N.C. 86, 116 S.E. 2d 365, cert. den. 365 U.S. 855, 5 L. Ed. 2d 819; S. v. Rogers, supra. Defendant relies upon Escobedo v. Illinois, 378 U.S.

478, 12 L. Ed. 2d 977, and *Massiah v. United States,* 377 U.S. 201, 12 L. Ed. 2d 246. These cases are easily factually distinguishable.

It is true the judge made no specific finding of fact that the confession was voluntary. In *S. v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84, the Court said:

> "While it is the better practice for a judge on a *voir dire* respecting an alleged confession to make his finding as to the voluntariness thereof and enter it in the record, a failure so to do is not fatal. Voluntariness is the test of admissibility, and this is for the judge to decide. His ruling that the evidence was competent of necessity was bottomed on the conclusion the confession was voluntary."

Such a "conclusion the confession was voluntary" is supported by all the evidence in the case, and there is nothing in this record upon which a contrary conclusion could be based.

In respect to the statement in defendant's confession about building time in Kentucky for cheques and writing cheques and in respect to other cheques, this is said in 23 Am. Jur., Forgery, § 59:

> "[It] is generally held that proof of similar acts of forgery or of uttering is admissible as bearing on the question of the intent with which the act of forgery or uttering of forged paper for which the defendant has been informed against was committed."

Defendant assigns as errors the court's permitting the solicitor for the State to ask Sergeant Chandley leading questions as to what FBI agent Moore told defendant as to his constitutional rights. The allowance of leading questions is a matter entirely within the discretion of the trial judge, and his rulings will not be disturbed on appeal, at least in the absence of abuse of discretion. Stansbury, N. C. Evidence, 2d Ed., § 31, p. 59. No abuse of judicial discretion here appears. All these assignments of error are overruled.

Defendant made no motion for judgment of compulsory nonsuit. In his brief he makes no contention that the State's evidence is insufficient to carry its case to the jury.

Defendant in his brief contends that the trial judge erred in failing to submit the issue of voluntariness of defendant's confession to the jury: that the question of voluntariness of the confession was a question of fact and not a question of law, and that all questions of fact should be determined by the jury and not the judge. This assignment of error and contention are overruled. The law is firmly established in this jurisdiction that the trial judge is required to determine the question as to whether a confession is voluntary or not before he permits it

to go to the jury, and when the trial court finds upon consideration of all the testimony that the confession was voluntarily made, his finding is not subject to review, if it is supported by competent evidence. *S. v. Rogers, supra; S. v. Barnes, supra.*

All defendant's assignments of error have been examined and all are overruled. In the trial below we find

No error.