458 P.2d 395

The STATE of Arizona, Appellee,

v.

Robert Morgan THOMPSON, Appellant.

No. 2 CA–CR 147.

Court of Appeals of Arizona.

Division 2.

Sept. 8, 1969.

---

302

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

Michael M. Moore, Tucson, for appellant.

MOLLOY, Chief Judge.

The important question in this case concerns the admissibility of a written confession elicited from and signed by appellant while he was recovering from a bout of intoxication, and after he had received, at his request, a quantity of liquor from an interrogating officer.

The appellant, Robert Morgan Thompson, and one Kunkle were jointly charged with and tried for the crimes of burglary and grand theft in connection with the entry into and looting of Pearl's Bar, an establishment located on the Miracle Mile in the City of Tucson. The evidence showed that the bar was entered sometime after 1:30 a. m., on the morning of June 28, 1968. A highway patrolman patrolling Interstate 10 about 17 miles east of Benson happened to see a man, who turned out to be Thompson, lying in a ditch alongside the highway at about 8:30 the same morning. Thompson was disheveled and smelled strongly of alcohol, and remarked, upon awakening, "Boy, have I been drunk." The officer advised him of his rights and placed him under arrest for being drunk in a public place. There was a car sitting just across the highway, and, upon investigation, the officer found Kunkle lying in it, along with a sack containing some 50 packs of cigarettes, a bag containing a large number of coins, and several bottles of liquor bearing indicia of use in a commercial bar. Evidence concerning these items and various statements made by both defendants at the time were admitted into evidence at the trial, and no question is raised in regard to this evidence on appeal.

Kunkle was also placed under arrest, and the officer proceeded with both men to police headquarters in Benson. Nothing of consequence occurred until between 2 and 2:30 p. m., of that day, when Detective Davis of the Tucson Police Department commenced questioning Thompson. At 3:25 p. m., Thompson signed a statement in question-and-answer form, in which he admitted burglarizing Pearl's Bar. The circumstances surrounding the confession, developed for the most part at a voluntariness hearing [1] held outside of the presence of the jury, are as follows.

According to Detective Davis, Thompson was nervous and somewhat shakey and bloodshot, but he was rational, coherent, and in control of himself. Davis described Thompson's condition as "hung-over" rather than "intoxicated." At the start of the questioning, Davis explained to Thompson his rights in detail, and Thompson indicated his understanding. Shortly after the questioning started, Thompson asked for a cup of coffee, and at the same time said, "Boy, I could sure use a big shot of whiskey right now." Davis demurred at first, but it was apparent to him that Thompson's previous indulgence had left him with an upset stomach, and drawing upon his own past personal experience, he put a "shot" of liquor into a cup of coffee and gave it to Thompson "To settle his stomach and to settle him." Davis reasoned, on the basis of his own experience, that, while liquor alone would worsen the situation and coffee alone might very well " * * * come right back up * * *," a mixture of the two would stay down and have a settling effect.

Thompson drank the "spiked" coffee and Davis testified that it did have a settling effect. Thompson asked for a second cup, and Davis furnished him with a second cup of plain coffee, without liquor. Davis did not give Thompson any further liquor. Shortly thereafter, in response to questioning, Thompson admitted the criminal acts and the typewritten statement was prepared

and signed. Davis testified that; at this time, Thompson was "* * * in a state of almost sober, stone sober reaction." Thompson was given food when he indicated he wanted it. Davis also testified that no threats or promises of any kind were made to Thompson in connection with the statement. Davis' testimony was for the most part corroborated by the testimony of others present at times during the questioning.

Thompson, on the other hand, gave testimony to the effect that he was given whiskey four times during and just after questioning, and that two of the servings were strong. There were some critical inconsistencies in Thompson's testimony. He testified on direct examination during the voluntariness hearing that he did not understand what his rights were when they were explained to him by Detective Davis, but on cross-examination he acknowledged that he knew " * * * most of them * * *," and he specifically acknowledged that he knew he had the right to remain silent. Thompson stated on direct examination that, while Detective Davis was questioning him in Benson, he told Thompson, "If you'll scratch my back, I'll scratch yours," thus, according to Thompson, offering the possibility of leniency in return for a statement. On cross-examination, however, Thompson testified that Davis made this statement in Tucson at a later date.

Thompson also stated on direct examination that he was " * * * pretty well in D.T.'s * * *" at the time he started talking to Detective Davis. On cross-examination, however, the record shows the following question and answer:

"Q Well, you, said you felt like you were going into them. I got the impression from what you said you didn't really feel you had the D.T.'s at that time.

"A I didn't, I had the shakes. I was just sick."

---

1. See State v. Goodyear, 100 Ariz. 244, 413 P.2d 566 (1966), and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

While there was some conflict in the evidence as to whether the subject of "D.T.'s" or delirium tremens was raised in the conversation between Thompson and Detective Davis at Benson, there is no evidence indicating that Thompson was actually in that condition or manifesting any of its symptoms at that time. Thompson testified that he was still anticipating an attack of "D.T.'s" when he arrived back in Tucson later the same evening. Thompson admitted on cross-examination a previous conviction for robbery.

The trial judge found that Thompson's statements, oral and written, " * * * were made freely and voluntarily beyond a reasonable doubt." The signed confession was accordingly admitted into evidence and read to the jury. Appellant, challenging this ruling, contends that, under all of the circumstances, the trial judge should have found the confession involuntary and inadmissible. Appellant calls our attention to the test laid down by the United States Supreme Court in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963):

> "If an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and a free will,' his confession is inadmissible because coerced. These standards are applicable whether a confession is the product of physical intimidation or psychological pressure and, of course, are equally applicable to a drug-induced statement." 83 S.Ct. at 754 (footnotes omitted).

The courts have frequently had occasion to pass upon the admissibility of confessions in cases where the confessor has been intoxicated. Our own Supreme Court set forth the following general test in State v. Clark, 102 Ariz. 550, 553, 434 P.2d 636, 639 (1967):

> "The general rule with respect to confessions made by a person under the influence of intoxicants can be summarized as follows: proof that the accused was

intoxicated at the time he confessed his guilt will not, without more, prevent the admissibility of his confession. [Citing authorities] * * * However, if it is shown that the accused was intoxicated to such extent that he was unable to understand the meaning of his statements, then the confession is inadmissible. [Citing authority] * * *"

■ Thus, if one is intoxicated to the extent of "mania," or if he is unconscious of the meaning of his words, his confession given under such conditions is inadmissible. Roper v. People, 116 Colo. 493, 179 P.2d 232 (1947), cited in State v. Clark, *supra*; State v. Williams, 208 So.2d 172 (Miss. 1968); Annot., 69 A.L.R.2d 361, at 369-370. But, the fact that one's blood contains .19 per cent alcohol[2] at the time he confesses does not render it inadmissible, People v. Hicks, 35 Ill.2d 390, 220 N.E.2d 461, 464-465 (1966), cert. denied 386 U.S. 986, 87 S.Ct. 1295, 18 L.Ed.2d 236; nor does the fact that the confessor is suffering from a hangover at the time of giving a confession destroy its admissibility. People v. Clouse, 222 Cal. App.2d 562, 35 Cal.Rptr. 272, 274-275 (1963); Eiffe v. State, 226 Ind. 57, 77 N.E. 2d 750 (1948). It is still "* * * a question of fact for the trial court whether the appellant's physical condition rendered him incapable of expressing his own free will." People v. Clouse, *supra*, at 35 Cal.Rptr. 275. If, based upon substantial evidence, the trial judge finds a confession voluntary notwithstanding some degree of intoxication, it is for the jury to assess the confessor's condition in determining the truth or falsity of the statements made, giving such consideration as to deems appropriate to the "* * * ancient maxim *in vino veritas*." People v. McQueen, 18 N.Y.2d 337, 274 N.Y.S.2d 886, 892, 221 N.E.2d 550, 554 (1966), quoted in State v. Clark, *supra*, at 102 Ariz. 553, 434 P.2d 639.

■ There appear to be relatively few reported decisions · adjudicating the ad-

2. At this stage, a person would be presumed to be under the influence of intoxicating liquor according to A.R.S. § 28-

692, making it an offense to drive a motor vehicle in such condition.

missibility of a confession where the confessing party was given intoxicating liquor by a police officer, and the mostly vintage cases which have dealt with this situation are not in accord. See 69 A.L.R.2d 368–369, and *compare* McNutt v. State, 68 Neb. 207, 94 N.W. 143 (1903), and State v. Hogan, 117 La. 863, 42 So. 352 (1906). Clearly, the police may not ply a suspect with liquor in order to induce him to confess. See Trepanier v. Rex, 19 Can.Crim.Cases 290 (1911), noted at 69 A.L.R.2d 368–369, and *compare* State v. Folkes, 174 Or. 568, 150 P.2d 17, at 26 (1944), cert. denied 323 U.S. 779, 65 S.Ct. 189, 89 L.Ed. 622, and Cortez v. State, 43 Tex.Crim. 375, 66 S.W. 453 (1902). On the other hand, we are unable to see that either reason or authority demands *ipso facto* rejection of a confession where officers have furnished a suspect a small dose of "hair of the dog" at his request and in the absence of compulsion or promise, in an honest, if possibly mistaken, belief that the suspect's well-being is served. While a practice of this sort entails a high degree of evidentiary risk and cannot be commended, we think the critical question still remains: Was the suspect's subsequent confession an expression of his own free will?

One recent authority so indicating is State v. Painter, 265 N.C. 277, 144 S.E.2d 6 (1965). In *Painter,* one officer Chandley and an F.B.I. agent interrogated the defendant the morning after he had been taken into custody. The defendant was "* * * jittery and sick by reason of his prior heavy drinking and lack of breakfast, and said he would like to see a doctor, and in Chandley's opinion he 'was almost ready to go into D.T.'s.'" 144 S.E.2d at 11. Chandley gave the defendant a drink of liquor, "* * * not to induce a confession, but to settle his nerves." *Id.* The appellate court, noting that the defendant had been understandingly advised of his rights and that his confession had not been otherwise improperly induced, affirmed admissibility of the confession as the "* * * product of a free will and a conscious understanding * * *" *Id.*

■ In our view, a proper application of the foregoing principles sustains the trial judge's ruling of admissibility in this case. Appellant did not undergo questioning until some six hours after he stated to the officer who found him that he *had been* drunk. There was no evidence at all of mania or unconsciousness in Benson. While there was sharply conflicting testimony as to the amount of liquor given to Thompson, Thompson's testimony on other subjects left the trial judge with scant basis for giving credence to his unsupported statements as to quantity, as opposed to the State's consistent testimony in this regard. The fact that some minor discrepancies on less than critical matters could be found in the testimony of the various officers present does not preclude a finding of voluntariness. *See* Commonwealth v. Rogers, 351 Mass. 522, 222 N.E.2d 766, 770–771 (1967). There is no suggestion that appellant was deprived of food or care. There is no contention that anything about the statement is indicative of unreliability. *Compare*, in this regard, People v. Schompert, 19 N.Y.2d 300, 279 N.Y.S.2d 515, 226 N.E.2d 305 (1967), where the court took note of the contents of a confession in the light of the other circumstances of the case and upheld the admissibility of a confession given by one in an "advanced" state of intoxication who was shortly thereafter taken to the hospital in delirium tremens. 226 N.E.2d 307. Our courts have never held that the impulse to confess must come out in a stressless and solitary hour of professorial repose. Substantial credible evidence supports the finding of free expression here. We therefore affirm the trial judge's ruling. State v. Sanders, 101 Ariz. 410, 413, 420 P.2d 281, 284 (1966); State v. Denton, 101 Ariz. 455, 458, 420 P.2d 930, 933 (1966).

We find the cases relied upon by appellant distinguishable or otherwise not controlling. In Gladden v. Unsworth, 396 F.2d 373 (9th Cir. 1968), there was no compliance with the procedure prescribed by

Jackson v. Denno [3] in regard to a written statement by the accused, and the oral statements in question were given in a state of "gross intoxication" (396 F.2d 381), " * * 'jabbering,' 'babbling,' and 'raving' " and conduct described as " 'wild' " (396 F.2d 379). In Logner v. State of North Carolina, 260 F.Supp. 970 (M.D.N.C.1966), the accused had been taking a drug in addition to alcohol, was too drunk to make a statement when he was taken into custody, was described as " 'gone' " by an officer, and continued to be in an obviously intoxicated condition throughout three interrogations. In In re Cameron, 68 Cal.2d 487, 67 Cal. Rptr. 529, 439 P.2d 633 (1968), the accused's initial confession was held voluntary, notwithstanding an .18 per cent blood-alcohol count and the lack of any warnings of his constitutional rights. Subsequent confessions following an interjection of the contraindicated tranquillizing drug thorazine were held involuntary.

United States ex rel. Collins v. Maroney, 287 F.Supp. 420 (E.D.Pa.1968), cited by appellant, involved an oral statement made " 'under the influence of drugs' " by one who had a "heavy" narcotics habit and "very substantial" withdrawal symptoms (287 F.Supp. 423, emphasis deleted). Compare State v. McFall, 103 Ariz. 234, 439 P.2d 805 (1968), which appellant has not cited. We do find in the credible and accredited evidence here the kind of " * * * possible compulsive circumstances * * " referred to in McFall (103 Ariz. 237, 439 P.2d 808).

The jury found appellant guilty of first degree burglary. Appellant contends that the evidence was insufficient to show that the entry occurred during the nighttime, and that consequently he could have been convicted only of daytime or second degree burglary. See A.R.S. §§ 13–301, subsec. 2 and 13–302.

■■ The State's evidence against appellant showed that the entry took place sometime after 1:30 a. m., and that he was found, prior to discovery of the crime in Tucson, asleep beside an interstate highway some 65 miles east of Tucson, at about 8:30 a. m. A confession signed by the codefendant Kunkle indicated that the entry took place at 2 or 3 a. m., but this statement could not be considered by the jury in determining appellant's guilt. State v. Sanchez, 59 Ariz. 426, 428–29, 129 P.2d 923, 924 (1942). We may take judicial notice of the fact that sunrise, the end of nighttime under § 13–301, subsec. 2, occurred in Tucson at 5:20 a. m., on June 28, 1968. The jury, however, was not advised of that fact. It is appellee's position here that, under all of the circumstances, the jury could have concluded beyond a reasonable doubt that the entry took place prior to sunrise.

We disagree with appellee's position. Without lengthy discussion, we think that, under the principles set forth in State v. Hunter, 102 Ariz. 472, at 475 et seq., 433 P.2d 22, at 25 et seq. (1967), it cannot be said that the jury could have concluded beyond a reasonable doubt that the entry took place at night. See People v. Wozniak, 167 Cal.App.2d 448, 334 P.2d 689 (1959), another case in which the jury was not advised of the time of sunrise, and compare the factually less than complete case of Lewis v. State, 72 Tex.Crim. 377, 162 S.W. 866 (1914). See also Taylor v. Territory, 7 Ariz. 234, 64 P. 423 (1901), and Annot., 82 A.L.R.2d 643.

■ This court has the power to modify the judgment of conviction by reducing the burglary conviction from first to second degree. A.R.S. § 13–1716; State v. Hunter, supra; State v. Hess, 7 Ariz.App. 45, 48, 436 P.2d 139, 142 (1968). We exercise that power here. There is, however, no need either for us to remand the cause for resentencing or for this court to consider modification of sentence. Appellant was convicted of grand theft as well as burglary, and he was sentenced to concurrent terms of not less than four nor more than five years on both offenses. The sentence imposed is within the five-year maximum

3. See n. 1, supra.

limit prescribed as punishment for second degree burglary. As *Hunter* indicates, the only purpose of finding degree in burglary cases is for fixing punishment. 102 Ariz. 478, 433 P.2d 28. Under the circumstances, no modification of sentence is warranted.

■ In view of the facts stated, we take occasion to note that, although Kunkle's confession implicated appellant, there is no contention by appellant that his constitutional rights were violated by reason of the joint trial. *See* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Nor could there be. There was no motion by appellant for a separate trial, and Kunkle, who did not deny signing his confession, took the stand and was cross-examined by appellant's counsel so that the right of confrontation was not denied. In his own statement, appellant admitted the entry, but indicated that Kunkle was passed out in his automobile at the time. Essentially, Kunkle's statement merely added his own participation in the crime.

The judgment of conviction for first degree burglary is modified to a judgment of conviction for second degree burglary and, as modified, the judgment and sentence of the trial court is affirmed.

HATHAWAY and KRUCKER, JJ., concur.