STATE v. ROBERT HAMER.

(Filed 7 April, 1954.)

**1. Criminal Law § 33—**

The extrajudicial statement of an accused is a confession if it admits defendant's guilt of the offense charged or even an essential part of the offense.

**2. Same—**

The extrajudicial confession of the accused in a criminal case is admissible if, and only if, it was in fact voluntarily made.

**3. Same—**

As a general rule, a confession is presumed to be voluntary, and the burden is on the accused to show the contrary.

**4. Same—**

Where an accused has made an involuntary confession, any subsequent confession is presumed to proceed from the same vitiating influence, and the burden is on the State to establish the voluntary character of the subsequent statement before it can be received in evidence.

**5. Same—**

The State offered in evidence two confessions by defendant. Upon the *voir dire* the trial judge ruled that the first confession was involuntary because wrung from defendant by threat of delivering him to a mob. The testimony disclosed that the second confession was made some 12 or 18 hours later, that defendant was told that he did not have to make a statement and was warned that whatever he said would be used for or against him. Defendant himself corroborated these facts. *Held:* The evidence supports the finding of the trial court that the second statement was voluntarily made.

**6. Criminal Law §§ 48, 81c (3)—Irrelevant statements of witnesses held to have been rendered harmless by action of trial judge.**

In this prosecution for rape one witness volunteered information to the effect that defendant was an escaped convict, and another witness made a statement to like effect in response to an indefinite question of the solicitor which did not foreshadow such response. Neither statement disclosed the nature of the offense for which the defendant was serving the sentence. In each instance the trial court immediately and emphatically withdrew the evidence from the consideration of the jurors and instructed them to disregard it. *Held:* The testimony was not admitted by the court and the incidents were rendered harmless by the prompt action of the trial judge.

INDICTMENT for the capital felony of rape tried by *Stevens, J.,* and a jury, at the September Special Term, 1953, of DUPLIN.

The only evidence at the trial relating to the merits was that of the State. When this evidence is interpreted in the light most favorable to the prosecution, it makes out this case:

On the morning of 25 March, 1953, the prisoner Robert Hamer, a Negro man, stealthily invaded the home of the prosecutrix and her husband, members of the white race, in a rural section of Duplin County while the husband was away at work. The prisoner grabbed the prosecutrix and hurled her to the floor, where he had carnal knowledge of her by force and against her will. The prisoner then fled the scene, leaving the prosecutrix in a battered and hysterical state. He was apprehended thirteen hours later by Deputy Sheriff R. M. Byrd and State Highway Patrolman C. C. Hester.

During the course of the trial the State proposed to introduce in evidence two extrajudicial statements made by the prisoner after his arrest. The first was made to Byrd, Hester, and three prison camp employees at the State prison camp in Duplin County about 1:00 a.m. on 26 March, 1953, and the second was made to James F. Bradshaw, Assistant Director of the State Bureau of Investigation, and Ralph Miller, Sheriff of Duplin County, at the common jail of Duplin County "between twelve and eighteen hours" later. The prisoner admitted, in essence, in his first statement that he assaulted the prosecutrix inside the dwelling with intent to rape her, but desisted and fled without accomplishing his purpose when she made outcry. He asserted, in substance, in his second statement that he hid in the house of the prosecutrix and her husband because he mistook it for a barn, that he assaulted the prosecutrix when he was suddenly discovered and surprised by her, and that he did not have sexual relations with her.

The prisoner challenged the admissibility of both of his extrajudicial statements on the ground that they were involuntary in character. The trial judge thereupon conducted a preliminary inquiry in the absence of the jury to determine the validity of the challenge. Both sides offered evidence on this inquiry.

The evidence of the opposing parties concerning the first statement was in sharp conflict. While Hester deposed to facts indicating that such statement was voluntarily made, the prisoner testified in person to the effect that it was wrung from him by Byrd, Hester, and the prison camp employees, who threatened to deliver him to a mob allegedly gathering near the scene of the supposed crime unless he confessed his guilt.

There was no substantial difference between the prosecution and the defense in respect to the circumstances attending the making of the second statement. According to the State's version, Bradshaw and Miller

made themselves known to the prisoner when they visited him at the Duplin County jail; they asked him to relate to them what had happened the previous day; they assured him, however, "that he didn't have to tell 'them' anything if he didn't want to"; and they cautioned him "that whatever he told 'them' would be used for or against him." The prisoner gave this account of the occurrence on his examination before the trial judge: "The S.B.I. Agent Bradshaw . . . said I could tell him the truth about it if I wanted to . . . He warned me of my rights and told me I didn't have to tell anything if I didn't want to. I told him because he wasn't going to do anything if I didn't . . . It all was the truth that I told him."

The trial judge adjudged the first extrajudicial statement to be involuntary, and excluded it. He found that the second extrajudicial statement was voluntarily made, and permitted it to be given in evidence over the prisoner's exception.

While he was testifying on the merits before the jury, State Highway Patrolman Hester volunteered the information that he had been hunting for the prisoner "from the time he broke from the prison camp." The trial judge sustained the objection of the prisoner to this testimony and admonished the jury to disregard it. Shortly thereafter the solicitor asked Hester what inquiry he put to the prisoner at the time of the arrest, and drew this response from him: "I asked him if he was the prisoner that escaped from the chaingang." The trial judge sustained the objection of the prisoner to the response, and gave the jury this instruction: "Gentlemen, you must not consider that statement."

The trial judge instructed the petit jury in a charge characterized by accuracy and clarity that it could return one of these verdicts: (1) guilty of rape; (2) guilty of rape with recommendation that the punishment be imprisonment for life in the State's prison; (3) guilty of an assault with intent to commit rape; (4) guilty of an assault upon a female person; and (5) not guilty.

The jury found the prisoner guilty of rape, but did not recommend that his punishment be imprisonment for life in the State's prison. The trial judge entered judgment that the prisoner suffer death by the administration of lethal gas, and the prisoner excepted and appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*Russell J. Lanier and Norwood Boney for the prisoner.*

ERVIN, J. The prisoner insists initially that he is entitled to a new trial because the trial judge erred in admitting his second extrajudicial

statement in evidence. He bases this contention on the theory that all the evidence adduced on the preliminary inquiry showed this statement to be involuntary in character.

We accept as valid the definition of Dean Wigmore, the great master of the law of evidence, that "a confession is an acknowledgment in express words by the accused in a criminal case of the truth of the guilty fact charged or of some essential part of it." Wigmore on Evidence (3d Ed., 1940), Section 821. As a consequence, there is no occasion for us to debate the intriguing question whether the rule excluding involuntary confessions of guilt is applicable to involuntary admissions of incriminating facts which merely tend, in connection with other facts, to show guilt. 20 Am. Jur., Evidence, section 478; 22 C.J.S., Criminal Law, section 732. Although the prisoner did not acknowledge to Bradshaw and Miller his guilt of the crime of rape, he did acknowledge to them his guilt of an essential part of that offense, to wit, an assault and battery.

The extrajudicial confession of the accused in a criminal case is admissible against him if, and only if, it was in fact voluntarily made. *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104. As a general rule, a confession is presumed to be voluntary, and the burden is on the accused to show the contrary. *S. v. Thompson,* 227 N.C. 19, 40 S.E. 2d 620; *S. v. Biggs,* 224 N.C. 23, 29 S.E. 2d 121; *S. v. Grass,* 223 N.C. 31, 25 S.E. 2d 193; *S. v. Murray,* 216 N.C. 681, 6 S.E. 2d 513; *S. v. Grier,* 203 N.C. 586, 166 S.E. 595; *S. v. Rodman,* 188 N.C. 720, 125 S.E. 486; *S. v. Christy,* 170 N.C. 772, 87 S.E. 499; *S. v. Sanders,* 84 N.C. 728. The general rule is subject to this exception: Where a confession has been obtained under circumstances rendering it involuntary, any subsequent confession is presumed to proceed from the same vitiating influence, and the burden is on the State to establish the voluntary character of the subsequent confession before it can be received in evidence. *S. v. Stevenson,* 212 N.C. 648, 194 S.E. 81; *S. v. Gibson,* 216 N.C. 535, 5 S.E. 2d 717; *S. v. Godwin,* 216 N.C. 49, 3 S.E. 2d 347; *S. v. Moore,* 210 N.C. 686, 188 S.E. 421; *S. v. Fox,* 197 N.C. 478, 149 S.E. 735; *S. v. Brittain,* 117 N.C. 783, 23 S.E. 433; *S. v. Drake,* 113 N.C. 624, 18 S.E. 166; *S. v. Drake,* 82 N.C. 592; *S. v. Lowhorne,* 66 N.C. 638; *S. v. Roberts,* 12 N.C. 259. The finding of the trial judge that the subsequent confession was voluntarily made will not be disturbed on appeal if it is supported by evidence. *S. v. Godwin, supra; S. v. Moore, supra; S. v. Fox, supra; S. v. Lowry,* 170 N.C. 730, 87 S.E. 62; *S. v. Fisher,* 51 N.C. 478; *S. v. Scates,* 50 N.C. 420; *S. v. Gregory,* 50 N.C. 315.

When the case on appeal is read in the light of these rules, it is manifest that the trial judge did not err in admitting the second or subsequent extrajudicial statement in evidence. To be sure, the first or prior statement was extorted from the prisoner through fear engendered in his mind

by the threats of the arresting officers and the prison camp employees to surrender him to a mob allegedly gathering near the home of the prosecutrix, and the presumption arose that the second or subsequent statement proceeded from the same improper influence. The testimony of the State's witnesses Bradshaw and Miller was sufficient, however, to overcome the presumption and establish the voluntary character of the second or subsequent statement. Indeed, the evidence given by the prisoner himself on the preliminary inquiry amply supports the finding of the trial judge that the second or subsequent statement was voluntarily made.

The prisoner asserts secondarily that he is entitled to have the cause tried anew because the testimony of the State's witness Hester indicating that he was an escaped convict at the time named in the indictment substantially impaired his right to a fair trial. He predicates this contention on the theory that this incompetent evidence necessarily impressed itself so strongly on the minds of the jurors to his prejudice that its subsequent withdrawal by the trial judge did not remove its prejudicial effect.

This contention rests on pure speculation. As a matter of fact, the incompetent evidence was not admitted by the trial judge. It was volunteered in the first instance by the witness. It was elicited in the second instance by an indefinite question of the solicitor, which did not foreshadow its nature. Its validity as evidence was promptly and emphatically disavowed by the trial judge in both instances. The incompetent evidence did not disclose that at the time of his escape the prisoner was serving a sentence for a serious crime or for a crime involving sex. For these reasons, we are impelled to hold that this cause falls within the purview of the general rule relating to such matters and that the statement of the incompetent evidence by the witness was rendered harmless to the prisoner by the prompt and emphatic action of the trial judge in withdrawing the evidence from the consideration of the jurors and instructing them to disregard it. *S. v. Campo,* 233 N.C. 79, 62 S.E. 2d 500; *S. v. Strickland,* 229 N.C. 201, 49 S.E. 2d 469; *S. v. Artis,* 227 N.C. 371, 42 S.E. 2d 409; *S. v. King,* 219 N.C. 667, 14 S.E. 2d 803.

Since the trial judge did not commit error in any matter of law or legal inference, the proceedings in the court below must be upheld.

No error.