STATE OF NORTH CAROLINA v. ALVIS THOMAS WILLIFORD AND BOYD BAXTER SQUIRES

No. 1

(Filed 15 October 1969)

**1. Criminal Law § 75— confessions — test of admissibility**

The test of admissibility of a confession is whether the statements made by defendant were in fact voluntarily and understandingly made.

**2. Criminal Law § 75— confessions — admissibility — defendant wounded and in custody**

A confession does not become inadmissible solely upon the showing that defendant was wounded, in pain and in police custody when he confessed.

**3. Criminal Law § 76— confession — admissibility — defendant's desire not to be interrogated — testimony before jury after voir dire — failure to strike confession**

In this armed robbery prosecution, the trial court did not err in failing to strike testimony of defendant's confession admitted after a voir dire hearing when a police officer thereafter testified before the jury that defendant told him, before he allegedly made the confession to another officer, that "I am not going to tell you a damn thing," where the record shows that defendant's statement was addressed solely to the officer who testified about it, that such officer immediately terminated his conversation with defendant, and that defendant thereafter talked with other police officers without coercion or intimidation, the officer's testimony not having conclusively demonstrated that defendant's confession was involuntary or that defendant was denied due process.

**4. Criminal Law § 76— admission of confession — sufficiency of findings**

In this armed robbery prosecution, findings of fact by the trial court were not sufficient to support the court's conclusion that incriminating statements made by defendant to a police officer while receiving hospital treatment for a gunshot wound were voluntarily and understandingly made, where the findings related to constitutional warnings given to defendant before he was taken to the hospital for treatment, and the court made no findings as to the immediate circumstances surrounding the making of the purported confession, extensive evidence of defendant's mental and physical condition at the hospital having been given, and defendant having testified that he had no recollection of making any statement.

**5. Criminal Law § 74— confession defined**

Any extra-judicial statement of an accused is a confession if it admits defendant's guilt of an essential part of the offense charged.

**6. Criminal Law §§ 76, 169— erroneous admission of confession — prejudicial error**

In this armed robbery prosecution, trial court's erroneous admission into evidence of statements made by defendant to a police officer without findings of fact sufficient to support its conclusion that the statements

were made voluntarily and understandingly was prejudicial to defendant, where the statements made by defendant admitted that defendant was "in on the robbery" and related to the manner in which it was planned, and defendant contended at trial that he knew nothing of its plan and was forced to participate by an armed stranger.

**7. Criminal Law § 113— joint trial — instructions — one defendant guilty — conviction of both defendants**

In this joint trial of two defendants for the same offense of armed robbery, a charge susceptible to the construction that should the jury find beyond a reasonable doubt that either defendant committed the robbery it should convict both defendants *is held* to constitute prejudicial error.

APPEAL from *Canaday, J.,* 2d April 1967 Criminal Session, WAKE Superior Court.

This is a criminal prosecution upon bill of indictment which charged that defendants, Alvis Thomas Williford and Boyd Baxter Squires, forcibly took from Thomas R. Freeman, Jr., and James Walter Edwards the sum of $580.15 in United States money by the threatened use of a shotgun.

The State, in substance, offered evidence as follows:

State's witnesses Thomas R. Freeman, Jr., and James Walter Edwards testified that they were employed by the Wake County Alcoholic Beverage Control Board at Store No. 4 located on E. Cabarrus Street in the City of Raleigh; that on 6 December 1966, Alvis Thomas Williford and Boyd Baxter Squires entered the store. Williford went behind the counter, took money from the cash registers, and stuffed it in his coat pockets while Squires held a sawed-off shotgun on them. One Robert Woods entered the store, and money was taken from his person by Williford. Defendants then fled the store.

Milton "Bud" Hunter testified that he worked next door and that he started to enter the ABC Store on Cabarrus Street when he saw Squires and Williford. Squires had a double barrel shotgun, and the employees of the store and "another boy" were in the store with their hands up. Hunter returned to his place of employment and got a pistol and took the cash from his employer's store and hid it in a truck parked between the ABC Store and his place of employment. Squires and Williford passed Hunter in the alley. Williford stopped, cursed and struck Hunter in the face. Hunter fired three shots at the fleeing Williford. Williford boarded a city bus and Hunter then notified the police.

The State offered other evidence which tended to show that the bus stopped near the corner of Davie and Fayetteville Streets and

police officers J. L. Denning and J. A. Mohiser boarded the bus. They found Williford in the bus, bleeding profusely from a wound near his ankle.

Officer Mohiser testified that he placed the defendant Williford under arrest and at that time searched him and found "green folding money" stuffed in his pockets. An ambulance was called and the police officers had Williford admitted to Wake Memorial Hospital.

While Officer Mohiser was testifying, the trial judge excused the jury, upon objection by defendants, and held a voir dire hearing in its absence. Upon the voir dire hearing Officer Mohiser testified that he fully warned defendant of his rights according to the requirements of *Miranda v. Arizona*, 384 U.S. 436. Officer Mohiser further stated:

> "The defendant was conscious at that time. The only thing I asked him on the bus was how bad his leg was hurt. He was holding it in a straight out position. His face was kindly drawed up with pain. He was just saying how bad he was hurt and squinting his eyes, and that was all that was said on the bus. He didn't make any statement to me while on the bus concerning the armed robbery. He didn't make any statement to me concerning the charge of armed robbery against him when I told him he was under arrest for it. He just sit there with his left leg out in front of him and squeezing his leg above his knee and his face was distorted with pain, it looked like."

On the voir dire hearing Officer Denning testified that he talked with Williford in the emergency room at the hospital. He, in part, stated:

> "Mr. Williford talked about wanting water very much. He was sweating very bad. That is about all he talked about other than what I questioned him about. He wanted some water very bad. I questioned him about the robbery, he stated that the fellow was with him, he didn't know him by name, said he called him Joe and had been knowing him approximately three days. . . .
>
> "He was sweating right bad all this time. At the time I was talking to him they was giving him some glucose. I talked to the defendant there at the hospital in the emergency room and he was conscious at that time. He carried on a conversation with us. . . . (H)e was talking to me freely, sensible."

Defendant Williford testified on voir dire that he did not remember the officers' warning him of his rights and he did not remember making any statement to anyone.

Upon the conclusion of the voir dire hearing the court found that the officers had properly warned defendant of his rights, and the court concluded, "that the statements made by the defendant Williford to Officer J. L. Denning at Wake Memorial Hospital were made voluntarily and with understanding."

Officer Denning then testified, over defendant's objection, before the jury as to statements by defendant, including the following:

". . . I asked him about who was in on the robbery with him.

"He stated that he .didn't know the man by name, had been knowing him about three days, had just got out of prison and all he knew he called him Joe. . . . The defendant Williford stated that after the robbery they were planning to mingle with the pedestrians downtown and walk back to the hotel. He didn't state why."

Defendant Williford testified that he went in the ABC Store on Cabarrus Street to make a purchase and that a man whom he did not know came in with a shotgun and ordered him to take the money from the cash registers and from a customer who came in the store. The unidentified man then took the money from him and ordered him to leave. He was running from the unidentified man with the gun when he was shot by Bud Hunter. Williford also testified before the jury that he did not remember making any statements to the police officers.

The jury returned verdicts of "guilty of armed robbery as charged" as to each defendant. Each defendant gave notice of appeal from the judgment entered on the jury verdict. Defendant Squires perfected his appeal to this Court, and by an opinion reported at 272 N.C. 402, was granted a new trial. Defendant Williford withdrew his notice of appeal on 8 May 1967, but on 12 February 1969 he petitioned this court for an order allowing him to appeal. On 5 March 1969 this Court entered an order permitting Williford to perfect his appeal.

*Attorney General Morgan and Staff Attorney Shepherd for the State.*

*Tharrington & Smith for defendant Williford.*

BRANCH, J.

Defendant's first assignment of error challenges the admission of the confession alleged to have been made by defendant to Officer J. L. Denning.

[1]    The test of admissibility is whether the statements made by
defendant were in fact voluntarily and understandingly made. *State*
*v. Gray,* 268 N.C. 69, 150 S.E. 2d 1, *cert. denied* 386 U.S. 911; *State*
*v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; *State v. Roberts,* 12 N.C.
259.

Defendant contends, *inter alia,* that the purported confession
was not voluntarily and understandingly made because of his phy-
sical and mental condition at that time. He relies upon the case of
*Beecher v. Alabama,* 389 U.S. 35, where the defendant was shot in
the leg while fleeing from the police. Immediately after the defend-
ant was shot by the police officers, an oral confession was obtained
by threats on his life accompanied by the firing of a rifle near his
ear while he lay wounded on the ground. Later, he was questioned
by two investigators after a morphine injection and while he was
feverish and in pain. The medical assistant in charge told him to
cooperate, and in the defendant's presence told the investigators to
let him know if defendant "did not tell them what they wanted to
know." The defendant was left alone with the investigators, and af-
ter a 90-minute "conversation" signed a written confession prepared
by the officers similar to the one first signed at gunpoint. In hold-
ing the confession inadmissible, the U. S. Supreme Court said:

> "The petitioner, already wounded by the police, was ordered
> at gunpoint to speak his guilt or be killed. From that time until
> he was directed five days later to tell Alabama investigators
> 'what they wanted to know,' there was 'no break in the stream
> of events,' *Clewis v. Texas,* 386 U.S. 707, 710. For he was then
> still in pain, under the influence of drugs, and at the complete
> mercy of the prison hospital authorities. Compare *Reck v. Pate,*
> 367 U.S. 433.

> ". . . A realistic appraisal of the circumstances of *this*
> case compels the conclusion that this petitioner's confessions
> were the product of gross coercion. Under the Due Process
> Clause of the Fourteenth Amendment, no conviction tainted by
> a confession so obtained can stand."

The distinctions between *Beecher v. Alabama* and the facts of the
instant case are obvious. In *Beecher v. Alabama,* there is an unbroken
stream of events that reek of intimidation, threat and coercion cal-
culated to frighten and obviate the free will of the defendant. The
only apparent similarity between the two cases is the fact that de-
fendant was wounded and gave the statement to police officers while
in custody.

The weight of authority appears to be that the admissibility of

a confession is not, *ipso facto,* rendered involuntary because defendant was suffering from physical injuries and resulting pain at the time he made the confession. These are circumstances to be taken into consideration by the jury in weighing the evidence. *State v. Horner,* 139 N.C. 603, 52 S.E. 136; *State v. Hamson,* 104 N.H. 526, 191 A. 2d 89; *State v. Dolan,* 86 N.J.L. 192, 90 A. 1034; *State v. Wise,* 19 N.J. 59.

**[2]**    It is further well settled in this jurisdiction that a confession is not rendered involuntary and incompetent by the mere fact that at the time of making it defendant was in prison or under arrest. *State v. Crawford,* 260 N.C. 548, 133 S.E. 2d 232; *State v. Thomas,* 241 N.C. 337, 85 S.E. 2d 300. It is the mental condition and compulsions that control when a confession is given. The confessor's physical condition is of little consequence unless it so affects his mental condition as to destroy voluntariness or understanding. Thus, we hold that the confession did not become inadmissible solely upon the showing that defendant was wounded, in pain, and confessed while in police custody.

**[3]**    In connection with the admission of the purported confession, the defendant assigns as error the court's failure to strike the confession, in light of testimony given by police officer R. L. Johnson before the jury and after the voir dire hearing, and the court's ruling on the admissibility of the confession. Pertinent to this contention is the testimony of Officer Johnson that defendant told him, before he allegedly made the confession, "I am not going to tell you a damn thing." Defendant contends that the officers were then precluded from further questioning by that portion of the opinion in *Miranda v. Arizona,* 384 U.S. 436, which states: "Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him."

It has long been the rule in this state that the admissibility of a confession is to be determined by the facts appearing in evidence when it is received or rejected, and not by facts appearing in evidence at a later stage of the trial. *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; *State v. Richardson,* 216 N.C. 304, 4 S.E. 2d 852. Doubt has been cast upon this position by cases which hold that when the involuntariness of a confession is conclusively demonstrated, a defendant is deprived of due process by admission of a confession even though important evidence regarding involuntariness was introduced after admission of the confession. *Blackburn v. Alabama,* 361 U.S. 199; *Indiana ex rel Anderson v. Brand,* 303 U.S. 95.

The facts of the instant case do not require that we resolve this

doubt since it does not appear that the testimony of Officer Johnson conclusively demonstrated that defendant's confession was involuntary or that defendant was deprived of due process. The record indicates that this statement was addressed solely to Officer Johnson, who immediately terminated his conversation with defendant. The ensuing events seem to imply that, for some unknown reason, defendant did not desire to tell Officer Johnson anything. Apparently, the defendant, without coercion or intimidation of any kind, talked with the other police officers.

[4] However, a more serious question is presented by defendant's assignment of error and contention that the trial court failed to make sufficient findings of fact to support his conclusions of law. In State v. Barnes, 264 N.C. 517, 142 S.E. 2d 344, Higgins, J., speaking for the Court, stated: "Under present procedures it is essential not only that a full investigation be made and the evidence recorded, but the facts must be found which disclose the circumstances and conditions surrounding the making of the incriminating admissions."

In the instant case the trial judge properly excused the jury and heard evidence from both the State and defendant on the question of whether the alleged confession was voluntarily and understandingly made. State v. Gray, supra; State v. Rogers, supra.

At the conclusion of the voir dire hearing the trial judge found the following facts:

". . . The Court finds that Officer Jimmy A. Mohiser and Officer J. L. Denning were present together on December 6, 1966 in the bus on Fayetteville Street with the defendant Williford; that on the bus on Fayetteville Street Officer Mohiser advised the defendant Williford prior to asking him any questions and prior to any admission or statement having been made by the defendant Williford, that anything that the defendant Williford — strike that — that the defendant Williford had the right to remain silent and that anything the defendant Williford said could be used against him and that he further advised the defendant Williford that he had the right to consult with a lawyer and to have the lawyer with him during interrogation and further that he advised the defendant Williford that if he were unable to secure a lawyer by reason of indigency, that a lawyer would be appointed for him; that the Court further finds that Officers Mohiser and Denning were in the presence of the defendant Williford some 30 or 40 minutes later at Wake Memorial Hospital at which time the defendant Williford made

certain statements and admissions to Officer J. L. Denning. . . ."

Based on these findings the trial judge concluded that "the statements made by the defendant Williford to Officer J. L. Denning at Wake Memorial Hospital were made voluntarily and with understanding. . . ."

There were no findings of fact as to the immediate circumstances and conditions surrounding the making of the purported confession. Findings of fact as to defendant's mental or physical condition were conspicuously absent. The failure to make these findings is highlighted by the voluminous evidence as to defendant's physical condition and by defendant's testimony that he had no recollection of making any statement. His contention that he did not know he had made a statement strikes at the very heart of the rule that to be admissible a statement offered in the nature of a confession must have been "voluntarily and *understandingly* made." (Emphasis ours) Clearly the evidence in the case sustains the facts found; however, the findings of fact are not sufficient to support the conclusion that the statements made by the defendant Williford to Officer J. L. Denning at Wake Memorial Hospital were made voluntarily and with understanding.

**[6]** The admission of the statement made by defendant was prejudicial. There seems to be plenary evidence to present a strong case against defendant without the purported confession; but the question of law for this Court is not whether there was sufficient admissible evidence to convict, but whether incompetent evidence of a prejudicial nature was admitted over objection. *State v. Squires,* 272 N.C. 402, 158 S.E. 2d 345.

**[5, 6]** Any extra-judicial statement of an accused is a confession if it admits defendant's guilt of an essential part of the offense charged. *State v. Hamer,* 240 N.C. 85, 81 S.E. 2d 193. The statement made by defendant admitted that he was "in on the robbery" and related the manner in which it was planned. His defense upon trial was that he was not "in on the robbery," that he knew nothing of its plan and was forced to take part in the robbery by an armed stranger.

**[7]** Defendant further assigns as error this portion of the court's charge:

". . . so, gentlemen of the jury, if the State has satisfied you from the evidence in this case beyond a reasonable doubt, the burden being upon the State so to do that on December the

6th, 1966, at about 5:30 or 5:45 o'clock p.m., the defendants, Boyd Baxter Squires and Alvis Thomas Williford, "or either of them," entered ABC Store #4 in the City of Raleigh and that in said store with the use of a sawed-off shotgun, which gun was at the time actually in the possession of the defendants or one of them, and that the defendants at the time and place aforesaid feloniously took and stole an amount of money, which money was in the possession or custody of James Walter Edwards or Thomas R. Freeman, as employees of said ABC Store, and that said sum of money was taken from the persons of or in the presence of the said Edwards or Freeman without the consent of or against the will of the said Edwards or Freeman and that such money was taken by violence, intimidation or by putting said Edwards or Freeman in fear by use of or the threatened use of said shotgun or other dangerous weapons and if the State has further satisfied you from the evidence and beyond a reasonable doubt that at said time and place the defendants or either of them acted with the specific felonious intent to take and steal said money and thereby deprive the owner or owners thereof permanently of such money and to convert said money to their own use, that is to the use of the defendants, then it would be your duty to return a verdict of guilty against the "defendants" of the charge of armed robbery in violation of the provisions of Section 87 of Chapter 24 of the General Statutes as charged in the Bill of Indictment in this case."

Defendant contends that this portion of the court's charge led the jury to believe that the guilt or innocence of both defendants would rest or fall upon the guilt or innocence of either of them.

In the case of *State v. Wolfe,* 227 N.C. 461, 42 S.E. 2d 515, the trial court charged:

" 'Like every other person who is put upon trial and charged with the commission of a crime, they are both presumed to be innocent, (and before you can return a verdict against them or either of them, upon either one of these charges, it is necessary for the State to offer evidence which satisfies you beyond a reasonable doubt of the guilt of one or both of them.)'

" 'If you find from the evidence and beyond a reasonable doubt that these two defendants, or either one of them, broke the door and went in the house, as contended by the State, that is, that there was a forcible entry of the house with intent at the time to commit an assault upon Jasper Best, it would be your duty to convict them upon that count of house-breaking.' "

Holding this to be prejudicial error, the Court stated:

"Thus the jury was directed that if they found, beyond a. reasonable doubt, that there was a felonious breaking and entering by either defendant they should return a verdict of guilty as to both. Certainly this conclusion is reasonably implied. Hence the vice in the instruction lies in the fact that the guilt of both was made to depend upon the guilt of either. *S. v. Walsh,* 224 N.C. 218, 29 S.E. (2d) 743."

See also *State v. Walsh,* 224 N.C. 218, 29 S.E. 2d 743, and *State v. Meshaw,* 246 N.C. 205, 98 S.E. 2d 13.

This assignment of error is well taken, as the sense of this instruction is that the jury should convict both defendants if either of them committed the crime of armed robbery. This is prejudicial error.

For errors indicated there must be a

New trial.